TALIAFERRO, Judge.
Plaintiff, an employee of Nealy Roberts, claims to have been so seriously injured in an accident on April 26, 1949, while performing the duties of the contract of hiring, that permanent total disability to do work of a reasonable character resulted. He sued his employer and the carrier of his insurance, Liberty Mutual Insurance Company, of Boston, Massachusetts, to recover compensation at the rate of $30.00 per week for a ■ period of four hundred (400) weeks, and for $500.00 medical expenses.
Nealy Roberts, the employer, prior to and on the date of the alleged accident, was inter alia, engaged in the manufacture of piling, and to successfully conduct that business he employed many workmen, including the plaintiff, who actually cut down the trees suitable for piling, sawed them into required lengths, and peeled them.
For a cause of action plaintiff alleged that on said date, while peeling a piling thirty feet long, it became necessary to turn it over, and to accomplish this, on account of its excessive weight, a cant hook was employed, and “while in the act of turning the piling, felt a sudden severe and sharp pain in his back and .left groin, and the injury was- so painful to petitioner’s back and stomach he immediately became nauseated, causing him to vomit.”
He further alleged:
“That as a direct result of said accident, petitioner hag sustained a lumbo sacral sprain, as well as a hernia and an additional strain to his inguinal canal; that petitioner has suffered and still suffers severe pain in his back and left groin, and he is unable to stand erect, stoop or walk without extreme pain, discomfort and inconvenience.”
The suit is resisted on the sole ground that plaintiff suffered no accident while in Roberts’ employ. Defendants aver that no such accident wás reported to the employer and that whatever disability or sickness plaintiff experienced on and immediately after April 26, 1949, was solely due to mumps with complications.
Plaintiff’s demand was rejected and his suit dismissed. He appealed.
The trial judge has provided us ' with lengthy written reasons for the judgment rendered by him. The sole issue, one of fact, was regretfully resolved against the plaintiff. It was held that he had not discharged the burden of proof.
To manufacture piling in the woods it is necessary that workmen operate in pairs, each individual being commonly referred to as a partner. Plaintiff’s partner on the date of the alleged accident was one Columbus Perkins. Other pairs were felling trees and converting them into piling not far from plaintiff and Perkins.
To support the allegations of the petition, plaintiff testified that he had worked from the small end of the piling to its butt end; that Perkins had followed the opposite course, and in obedience to Pei-kins’ direction, he picked up the cant hook and was in the act of turning over the log when the alleged pains and abnormal sensations in his body, due to strain, suddenly developed. He further testified that he at once informed Perkins that he had hurt himself, but immediately resumed peeling the log; that in about thirty minutes he developed' fever and became very -weak. Contrary to this testimony, Perkins testified that he, himself, hándled the cant hook and turned the log over, and denies that plaintiff at the time and place alleged was hurt or complained to him of being hurt.
The accident is alleged to have occurred near the hour of 10:30 o’clock A.M. At the noon’ hour all of the workmen assembled for lunch at a truck carrying the water jug. There were perhaps a dozen of them. Not one of them testified in behalf of the plaintiff. They were used by defendants as witnesses. 'While some of them say that plaintiff then complained of having fever and felt badly, to none of them did he state that he had been injured as by him presently contended. After lunch the crew worked for another hour- or so and then Ml were transported to their respective homes in the employer’s truck. On this return trip plaintiff did not make mention of the alleged accident to anyone.
*654 The second day following1 the alleged accident plaintiff succeeded in submitting his case to Dr. D. V. Donaldson of Colfax, Louisiana. He was then complaining of pain of the jaws and testicles, which were swollen. The diagnosis was mumps. The doctor prescribed in keeping with the diagnosis, but the medicine gave no relief. At ■the end of four days he reported back to this doctor and informed him of the failure of the medicine to give relief. More medicine was prescribed and taken, with like results. To- Dr. Donaldson plaintiff gave no history of the accident alleged upon. Dr. Lawrence of Colfax was then called in to treat plaintiff. He at once advised him to go to the Charity Hospital in Pine-ville, Louisiana, — in fact, carried him there. This was on May 3rd, one week after the alleged accident. Plaintiff remained in the hospital until the 6th of May, and was treated for mumps. Dr. Lawrence did not testify in the case, but the hospital records, introduced in evidence, reveal these significant facts, viz:
“Became ill about one week ago. At that time began to have chill® and fever. Had frontal headaches and pain in his back. Was nauseated and has vomited several times. About S days ago patient began to have painful scrotum. Both testicles became swollen and quite painful. Has continued to run high fever. Had contact with mumps 3 weeks ago. Has been bitten by many big black ticks. S. R. is negative. * * * Both testicles are diffusely enlarged 3 x and quite tender.
Orchitis. Due to mumps.
L’Herrisson.”
At this time his temperature was 102.5°. So far as the hospital records disclose, plaintiff, while a patient at this time, gave no history of an accident. He continued to complain of pain in his lower back and in the left inguinal region, and returned to the hospital for examination and check-up on June 6th. Until September 14th he repeated these visits weekly or nearly so. On July 13th the hospital record® disclose that the impression there was that the patient had a “lumbo sacral sprain” and was treated for that condition. X-ray pictures were negative as to bone injury. The record for September 14th, two weeks prior to trial of the case, discloses that patient was requested to return in two weeks, but it does not appear that he did so.
Dr. P. M. Davis, Jr., prescribed for plaintiff on some of his visits to the hospital from and after July 20th. Examination at that time indicated to Dr. Davis, that he had a lumbo-sacral strain. Treatment was by injections. Rest was recommended. He next saw the patient at' the hospital on August 30th. Examination at that time revealed very little if any of the unfavorable symptoms that were found at prior examinations. His general conditions seemed to be much improved. But, on September 14th, examination indicated “that he still might have lumbo-sacral strain or fibrosis” and use of proper corset was advised. The patient did not impart to Dr. Davis that he had recently had mumps. Dr. Davis was of the opinion that the pain in the inguinal region could have been the result of the mumps. He further testified that plaintiff had a chronically weak back, of many years’ standing, and that he was easily susceptible to lumbo-sacral strain which could arise from normal activity, without violent strain or accident. It was Dr. Davis’ opinion that plaintiff was disabled to perform heavy manual labor and would not venture an opinion as to its duration.
Dr. W. L. Murrell examined plaintiff on June 6th. This examination revealed definite varicocele which he defined to be a “tortuous blood vessel within the scrotum, or varicose veins within the scrotum”. The patient was then complaining of pain in the lower abdomen and around the left hip. He was not told by plaintiff of the mumps Ke had recently had. It was Dr. Murrell’s ■ opinion that the varicocele could be caused by a heavy strain, but not necessarily so. He would not say whether the mumps could produce the condition he found to exist.
At defendants’ request,- Dr. H. H. Hardy of Alexandria examined the plaintiff on June 27th. He gave a history of having hurt himself on April 26th by lifting the log with a cant hook.. He was then complaining of constant pain in the left in *655 guinal region that extended “through to the back”; that it never completely ceased; was increased by activity, but abated some by lying down. It did not radiate but remained in the lumbar area.
Dr. Hardy put the patient through various tests to ascertain, so far as possible therefrom, whether there really existed the professed pain, etc. It was his opinion that plaintiff was greatly exaggerating the conditions. He believed he was able to resume work. Plaintiff, as with all the other doctors, in giving the case history, did not tell Dr. Hardy that he had not so long ago had a severe case of the mumps. When asked if mumps could bring about the condition of which plaintiff complained, the doctor answered: “Yes, it would account for all his complaints in this area.”
The only question to determine is whether the testimony supports the happening of the alleged accident. The trial judge simply held on this point that plaintiff had failed to make out his case. Plaintiff’s own conduct repels a favorable conclusion on this issue. It is very significant that he did not tell Dr. Donaldson nor the hospital physicians who gave him attention when first therein as a patient, that he had had the alleged accident. . It seems to us this would have been about the first information he would have imparted had he had the accident.
The disposition of fellow workmen, when possible, to assist one of their number when injured on the job, is proverbial. Not one of those in a position to assist plaintiff by his testimony (if he had been injured), did so. This strongly militates against his contention in the case.
Plaintiff’s credibility has suffered serious impairment, not only from the above related facts, but also from the fact that in giving the cáse history, some half dozen times, he withheld the fact that he had been exposed to mumps, and, in fact, had contracted a serious case of. it. He seeks to explain this conduct by saying when eight years of age he had mumps in both sides. It is inconceivable that the doctors could be in error in diagnosing the case in this respect, They all say that one never has mumps in both sides but once, and it is shown that both of plaintiff’s jaws and testicles were involved.
The trial judge, while deciding that plaintiff was suffering disability from physical conditions, at time of trial, ruled that the medical testimony was inconclusive as to whether this was due to trauma or traceable to the effect of the mumps. We believe, as said by Dr. Hardy, all his physical ailments are traceable to the mumps with complications.
There are strong reasons that support the suspicion that after realizing he would not be able to work for some time (after being treated at the hospital) the plaintiff conjured the idea of the accident.
The learned trial judge, in. a painstaking manner, analyzed the testimony of all of the witnesses, and, as said before, reached the conclusion that plaintiff had not established his case. We concur in this conclusion.
For the reasons herein assigned, the judgment from which appealed is affirmed, with costs.